UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MAINE WINDJAMMERS, INC.,      )
                              )
        Plaintiff             )
                              )
v.                            )     No. 2:18-cv-00242-JHR
                              )
SEA3, LLC, et al.,            )
                              )
        Defendants            )

## MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS COUNTERCLAIMS AND MOTION TO AMEND COUNTERCLAIMS[1]

In this maritime breach of contract action, two of the defendants, Sea3, LLC ("Sea3") and Robert H. Larsen ("Mr. Larsen") (together, the "defendants"), have brought counterclaims against plaintiff Maine Windjammers, Inc. (the "plaintiff" or "Windjammers") alleging misrepresentation (Count I), fraud in the inducement (Count II), breach of contract (Count III), breach of implied warranty of seaworthiness (Count IV), breach of express warranty of seaworthiness (Count V), q*uantum m*e*ruit* (Count VI), quasi contract/unjust enrichment (Count VII), and deceptive trade practices (Count VIII). *See* Counterclaims, commencing on page 13 of Defendants' Answer to Plaintiff's Amended Complaint; Affirmative Defenses; and Counterclaims (ECF No. 20), ¶¶ 11-48. The plaintiff moves to dismiss (i) Counts I and II on the grounds that they conflict with the terms of the parties' agreement and, in any event, fail to meet the heightened fraud pleading requirement of Rule 9(b), (ii) Count VIII under Rule 12(b)(6) because it seeks damages unavailable under the relevant statute, and (iii) Counts I-VIII as to Mr. Larsen because he lacks standing to sue in his personal capacity. *See* [Motion To Dismiss and] Memorandum of Law in Support of Maine

---

[1] The parties have agreed to have me preside over all proceedings in this action, including the entry of judgment. ECF No. 7.

Windjammer[s], Inc.'s Motion To Dismiss Count I, II, and VIII of Sea3 and [Counts I-VIII of] Larsen's Counterclaims ("Motion To Dismiss") (ECF No. 22) at 1-2. In turn, the defendants seek to add details to their fraud counterclaims (Counts I and II) and to pursue attorney fees pursuant to their Maine Uniform Deceptive Trade Practices Act ("MUDTPA") counterclaim (Count VIII). *See* Motion To Amend at 2-4. *See* Defendants/Counterclaim Plaintiffs Sea3, LLC's and Robert H. Larsen's Motion To Amend Counterclaims ("Motion To Amend") (ECF No. 24) at 2-4.

For the reasons that follow, I grant the defendants' motion to amend Counts I and II and deny it as to Count VIII, and I grant the plaintiff's motion to dismiss Count VIII in its entirety and Counts I-V to the extent pressed by Mr. Larsen, and otherwise deny it.

## I. Applicable Legal Standards

### A. Motion To Amend

Pursuant to Rule 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The First Circuit has explained:

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . . As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Scheduling orders, for example, typically establish a cut-off date for amendments (as was apparently the case here). Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b). This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent. Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show "substantial and convincing evidence" to justify a belated attempt to amend a complaint.

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004) (citations, internal quotation marks, and footnotes omitted).

The defendants filed their motion on October 9, 2018, *see* Motion To Amend at 1, prior to the parties' November 7, 2018, deadline to amend pleadings and join parties, *see* Scheduling Order (ECF No. 11) at 2. Therefore, the liberal default rule applies.

### B. Motion To Dismiss

The Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román-Oliveras v. P.R. Elec. Power Auth*., 655 F.3d 43, 45 (1st Cir. 2011). "In so doing, however, we disregard facts which have been conclusively contradicted by [the alleging party's] concessions or otherwise." *Lister v. Bank of Am., N.A.*, 790 F.3d 20, 23 (1st Cir. 2015) (citations and internal quotation marks omitted). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St.*

3

*Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## II. Factual Background

The plaintiff brings claims for breach of contract, promissory estoppel, and unjust enrichment, *see* Complaint (ECF No. 1) ¶¶ 21-48, alleging the following:

Defendant Sea3 entered into an agreement with Windjammers (the "Agreement") to lease the schooner "Halie & Matthew" (the "Vessel"), with an option to purchase the Vessel. *Id.* ¶ 7. Mr. Larsen and defendant Stephen Taylor personally guaranteed Sea3's obligations pursuant to the Agreement. *Id.* ¶ 8. Windjammers committed $50,000 toward the completion of a list of agreed repairs and improvements to the Vessel. *Id.* ¶ 10. The defendants were responsible for making the repairs and improvements but failed to complete them, instead leaving the Vessel in a state of disrepair and refusing to pay the agreed-upon rental fees. *Id.* ¶¶ 11-17.

The defendants' counterclaims tell a different story. They allege:

The parties' relationship was governed not only by the Agreement but also by "verbal and written discussions[.]" Counterclaims ¶ 6. Windjammers, however, misrepresented that the Vessel was "fully operational prior to the execution of the agreement" and "attempted to induce [the defendants] to execute the agreement without a survey quickly, and on false pretenses." *Id.* ¶¶ 7-8. In actuality, Windjammers knew that the Vessel was not fully operational and had a "troubled history with the Coast Guard." *Id.* ¶¶ 9, 26. The defendants, for their part, "significantly improved the condition of the Vessel[.]" *Id.* ¶ 10.

### III. Discussion

### A. Fraud Counterclaims

The defendants seek to amend their fraud counterclaims (Counts I and II) to allege that, prior to the execution of the Agreement, the plaintiff made false representations regarding various systems (including the propulsion, plumbing, electrical, navigational, and communications systems) as well as the bowsprit, propeller, transmission, and hull. *See* Defendants/Counterclaim Plaintiffs Sea 3, LLC's and Robert H. Larsen's [Proposed] Amended Counterclaims ("Proposed Amended Counterclaims") (ECF No. 24-1), attached to Motion To Amend, ¶¶ 7-14.

The plaintiff moves to dismiss those counterclaims because they "directly conflict" with the terms of the Agreement, *see* Motion To Dismiss at 1-4, and argues that, in any event, allowing their amendment would undermine Rule 9(b)'s public policy purposes, *see* Response and Objection of Maine Windjammers, Inc. to Defendants Sea3 and Larsen Motion To Amend Counterclaims ("Opposition to Amend") (ECF No. 28) at 2-3.

To the extent that the plaintiff moves to dismiss Counts I and II on the basis that they conflict with the terms of the parties' integrated agreement, *see* Motion To Dismiss at 2-4, its motion is denied.

As the defendants note, *see* Defendants/Counterclaim Plaintiffs Sea3, LLC's and Robert H. Larsen's Response to Plaintiff's Motion To Dismiss the Counterclaims ("Opposition to Dismiss") (ECF No. 23) at 4-5, because "[f]raud vitiates all contracts into which it enters[,]" "[a]ny person may introduce parol evidence to evidence the fact of a false and fraudulent representation made for the purpose of inducing that person to execute a contract[,]" *Harriman v. Maddocks*, 518 A.2d 1027, 1029 (Me. 1986) (citations and internal punctuation omitted). This is true even when, as here, the agreement contains an integration clause. *See, e.g., Ferrell v. Cox*, 617 A.2d 1003, 1006 (Me. 1992) ("Maine precedent is clear. A signed agreement that contradicts prior oral

statements does not bar an action for fraud as a matter of law. . . . A plaintiff's reliance on the fraudulent misrepresentations of a defendant is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to the plaintiff.").

To the extent that the plaintiff opposes the defendants' bid to amend Counts I and II on the basis that doing so would undermine Rule 9(b)'s public policy purposes, as a result of which those counts should be dismissed, *see* Opposition to Amend at 2-3; Final Reply Memorandum of Plaintiff, Maine Windjammers, Inc., in Support of Motion To Dismiss ("Dismiss Reply") (ECF No. 27) at 2-3, its argument is unpersuasive.

The plaintiff observes that Rule 9(b)'s purposes include (i) providing notice to defendants, (ii) precluding groundless fraud claims "'as a pretext to discovering a wrong,'" and (iii) safeguarding "'defendants from frivolous charges which might damage their reputations.'" Opposition to Amend at 2-3 (quoting *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987)). It notes that, in *J.S. McCarthy, Co. v. Brausse Diecutting & Converting Equip., Inc.*, 340 F. Supp.2d 54 (D. Me. 2004), this court permitted a plaintiff to engage in limited discovery to attempt to satisfy the particularity requirement of Rule 9(b) when "the alleged facts fraudulently withheld appeared to be uniquely and unequally within the knowledge of the party seeking dismissal of the action for failure to comply with Rule 9(b)." Opposition to Amend at 2; *see also* Dismiss Reply at 2-3; *McCarthy*, 340 F. Supp.2d at 60. It argues that in this case, by contrast, the defendants possessed all of the facts of the alleged fraud long before they filed their counterclaims. *See* Opposition to Amend at 2; Dismiss Reply at 2-3. However, *McCarthy* is distinguishable in that it concerned the propriety of allowing a party to engage in discovery to attempt to amend its complaint to satisfy Rule 9(b), not the underlying propriety of the amendment. *See McCarthy*, 340 F. Supp.2d at 59-60.

More generally, the plaintiff's basis for opposing the defendants' proposed amendments to Counts I and II is unclear: it could constitute an argument of undue delay, bad faith, or undue prejudice to the plaintiff were the amendments allowed.

To the extent that the plaintiff is arguing that the defendants engaged in undue delay, its argument fails. The defendants filed their motion to amend their counterclaims on October 9, 2018, *see* ECF No. 24, less than two months after they first asserted them on August 20, 2018, *see* ECF No. 8, and prior to the parties' deadline to amend pleadings. The motion, therefore, is timely.

To the extent that the plaintiff is arguing that the defendants seek to amend Counts I and II in bad faith, it articulates no bad faith, at most complaining that the defendants should not be allowed "to overcome and correct [their] failure" to comply with Rule 9(b)'s heightened pleading standard. *See* Opposition to Amend at 2. Yet, a party's attempt to comply with the heightened pleading standard of Rule 9(b) is not indicative of bad faith.

To the extent that the plaintiff is arguing that amendment would cause it undue prejudice, it articulates no such prejudice. *See id*. at 2-3.

Tellingly, the plaintiff does not contend that Counts I and II, as the defendants propose to amend them, would fail to meet Rule 9(b)'s particularity requirement, *see* Dismiss Reply at 2-3, and I affirmatively find that they would.

For these reasons, I grant the defendants' motion to amend their fraud counterclaims (Counts I and II) and deny the plaintiff's motion to dismiss them.

### B. Deceptive Trade Practices

The plaintiff moves to dismiss Count VIII, the defendants' counterclaim for damages pursuant to the MUDTPA, 10 M.R.S.A. § 1212, on the basis that "money damages are not available under that Act." Motion To Dismiss at 2. The defendants "acknowledge that they are not entitled to money damages" under the MUDTPA but argue that, if they prevail on their other counts

seeking money damages, they might be entitled to attorney fees pursuant to 10 M.R.S.A. § 1213, which are "available as a form of relief separate and apart from injunctive relief." Opposition to Dismiss at 3 n.2; Defendants/Counterclaim Plaintiffs Sea 3, LLC's and Robert H. Larsen's Reply Memorandum to Plaintiff's/Counterclaim Defendant's Response and Objection to Defendants'/Counterclaim Plaintiffs' Motion To Amend Counterclaims ("Amend Reply") (ECF No. 29) at 2 (citing *Trusiani v. Ste Mar, Inc.*, Civil Action Docket No. CV-88-398, 1989 Me. Super. LEXIS 243 (Me. Super. Ct. Nov. 27, 1989)). Accordingly, they move to amend Count VIII to add a reference to 10 M.R.S.A. § 1213. *See* Proposed Amended Counterclaims ¶ 62.

The defendants' argument boils down to an assertion that the MUDTPA can, in effect, serve as an attorney fees enhancement when coupled with any viable claim for compensatory damages. In *Trusiani*, the Maine Superior Court ruled that a plaintiff could recover punitive damages and attorney fees after a jury determined that the defendant had both committed fraud and violated the MUDTPA. *See Trusiani*, 1989 Me. Super. LEXIS 243, at *1. However, nothing in the *Trusiani* decision suggests that the defendants can plead a MUDTPA claim for the sole purpose of seeking attorney fees. *See generally Trusiani*, 1989 Me. Super. LEXIS 243. To the contrary, this court has previously dismissed a MUDTPA claim because the plaintiff did not seek injunctive relief. *See McCarthy*, 340 F. Supp.2d at 61-62.

Accordingly, because the defendants' MUDTPA counterclaim, even as proposed to be amended, does not state a claim upon which relief can be granted, I grant the plaintiff's motion to dismiss Count VIII of the counterclaims and deny the defendants' motion to amend it.

### C. Standing

The plaintiff seeks the dismissal of all counterclaims filed by Mr. Larsen, arguing that his status as a guarantor of Sea3's obligations is insufficient to confer standing to sue on his own behalf. *See* Motion To Dismiss at 4-5. The defendants acknowledge that the Agreement conveys

no "benefit" to Mr. Larsen, Opposition to Dismiss at 2 n.1, but contend that, for several reasons, he nonetheless has standing to press his counterclaims, *see id*. at 9-10.

First, the defendants argue that the guarantee agreement involving Mr. Larsen should be considered a "'unitary transaction'" with the underlying agreement and that both should be construed together. *Id*. (quoting *Crowe v. Bolduc*, 365 F.3d 86, 96 (1st Cir. 2004)). Second, the defendants argue that the plaintiff makes no distinction between Sea3 and Mr. Larsen when referring to the defendants' obligations under the contract. *See id*. at 10. Finally, the defendants argue that, because the plaintiff is seeking to "impose liability on Robert Larsen pursuant to the personal guarantee he signed with respect to the Vessel Lease Agreement, and the obligations imposed upon him under the terms of the Vessel Lease, he has a right to raise counterclaims to that cause of action." *Id.*

The defendants' arguments are not persuasive. Standing is conferred on an individual when he has a "personal stake in the outcome," which is determined pursuant to a three-part test. *Pagán v. Calderón*, 448 F.3d 16, 27 (1st Cir. 2006) (citation and internal quotation marks omitted). The First Circuit has outlined that test as follows:

> The first of these prerequisites deals with harm. The [counterclaimant] must adequately allege that he suffered or is threatened by an injury in fact to a cognizable interest. An injury in fact is one that is concrete and particularized, on the one hand, and actual or imminent (as opposed to conjectural or hypothetical), on the other hand. *In turn, a particularized injury is one that affects the plaintiff in a personal and individual way.*
>
> The second prerequisite deals with causation (what some courts have called "traceability"). To meet this requirement, the [counterclaimant] must adequately allege that the asserted injury is causally connected to the challenged conduct. This causal connection must be demonstrable; in other words, it cannot be overly attenuated.
>
> The third prerequisite is redressability. The [counterclaimant] must adequately allege that a favorable result in the litigation is likely to redress the asserted injury.

9

*Id.* (citations and internal punctuation omitted) (emphasis added).

Under First Circuit precedent, Mr. Larsen's allegations cannot satisfy the harm element of the standing requirements as to Counts I, II, III, IV, and V. First Circuit law does not confer standing if the harm to the individual is "derivative" of the underlying harm. *Id.* at 29 (citing *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt.*, 295 F.3d 1065 (10th Cir. 2002), and *Stein v. United Artists Corp.*, 691 F.2d 885, 896 (9th Cir. 1982), for the proposition that "one's status as a guarantor" does not confer "standing to assert an individual claim against a third party where that harm is derivative of that suffered by the corporation") (internal quotation marks omitted). The first five counts of the counterclaims arise from the lease agreement between Sea3 and the plaintiff. *See* Proposed Amended Counterclaims ¶¶ 25-51. Because Mr. Larsen is a non-party to that agreement and a mere guarantor of Sea3's obligations thereunder,[2] any harm flowing to him as a result of the conduct alleged in those counts is derivative of the underlying harm that the plaintiff allegedly caused Sea3.[3]

On the other hand, careful review of Mr. Larsen's allegations in Counts VI and VII persuades me that those counts are not derivative of Sea3's obligations pursuant to the lease agreement. *See* Proposed Amended Counterclaims ¶¶ 52-59. He brings claims for *quantum meruit* and for unjust enrichment, neither of which requires an express contractual relationship, *see, e.g., Packgen v. BP Exploration & Prod., Inc.*, 754 F.3d 61, 70-71 (1st Cir. 2014), alleging that he

---

[2] The defendants do not allege that Mr. Larsen signed the Agreement in his personal capacity, *see* Proposed Amended Counterclaims ¶ 6, and the Agreement, a copy of which the plaintiff appended to its complaint, reveals that he did not, *see* Vessel Lease and Option To Purchase, Exh. A (ECF No. 1-1) to Complaint, at 11.

[3] The defendants' specific arguments against the dismissal of all of Mr. Larsen's counterclaims do not help them. *Crowe* did not address standing. *See Crowe*, 365 F.3d at 95-97. Whether or not the court construes the guarantee agreements together with the lease agreement makes no difference regarding standing. Construing them together would not change the derivative nature of the harm Mr. Larsen alleges in Counts I through V. Moreover, neither the plaintiff's characterization of Mr. Larsen's role, nor the fact that the plaintiff has brought claims against Mr. Larsen, confers Mr. Larsen with standing to press those five counts.

personally performed services that conferred a benefit to the Vessel of which Windjammers was aware and for which Windjammers refused to pay, *see* Proposed Amended Counterclaims ¶¶ 40-41, 43-45.[4]  Mr. Larsen has standing to press these claims.

Accordingly, I grant the defendants' motion to dismiss Counts I through V of Mr. Larsen's counterclaims but deny it as to Counts VI and VII.

### IV.  Conclusion

For the foregoing reasons, I **GRANT** the Motion To Amend **IN PART**, as to Counts I and II of the defendants' counterclaims, and otherwise **DENY** it, and **GRANT** the Motion To Dismiss **IN PART**, as to Count VIII of the defendants' counterclaims in its entirety and Counts I, II, III, IV, and V solely as to Mr. Larsen, and otherwise **DENY** it.  The defendants are **DIRECTED** to file on the ECF docket, no later than May 28, 2019, an amended unified answer, affirmative defenses, and counterclaims consistent herewith, which shall supersede ECF No. 20.

Dated this 19th day of May, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] "*Quantum meruit,* also sometimes labelled 'contract implied in fact,' involves recovery for services or materials provided under an implied contract." *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269, 271 (citations omitted). "Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay, and the damages analysis is based on principles of equity, not contract."  *Id*. (citations, internal quotation marks, and footnote omitted).