UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MAINE WINDJAMMERS, INC.,                )
                                        )
            Plaintiff                   )
v.                                      )    No. 2:18-cv-00242-JHR
                                        )
SEA3, LLC, et al.,                      )
                                        )
            Defendants                  )

*MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION TO COMPEL ADDITIONAL VESSEL VISIT OF EXPERT THOMAS HILL[1]*

Defendants Sea3, LLC, Robert H. Larsen, and Stephen Taylor (together, "Sea3") move to compel plaintiff Maine Windjammers, Inc. ("Windjammers") to allow Sea3's retained expert, Thomas Hill, to visit the *S/V Halie & Matthew* ("Vessel") for a third inspection. *See* Defendants' Motion for Expert Thomas Hill To Visit the Vessel ("Motion") (ECF No. 63). Because Sea3's request is untimely and disproportional to the needs of the case and, in any event, the information sought could be obtained, substantially, by less burdensome means, I deny the motion.

### I. Applicable Legal Standards

Federal Rule of Civil Procedure 34(a) grants a party the right to request that another party "produce and permit the requesting party or its representative to inspect . . . any designated tangible things[.]" Fed. R. Civ. P. 34(a)(1)(B). However, such requests must be "within the scope of Rule 26(b)[.]" *Id.* Rule 26(b)(1) allows parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

---

[1] The parties have agreed to have me preside over all proceedings in this action, including the entry of judgment. ECF No. 7.

1

> importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"While district courts are to interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of information among litigants, limits do exist." *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd*., 333 F.3d 38, 41 (1st Cir. 2003). For instance, Rule 26(b)(2)(C) requires courts to limit the extent of otherwise allowable discovery if

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Finally, "[a] district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes." *Faigin v. Kelly*, 184 F.3d 67, 84 (1st Cir. 1999). "Several courts have used this management power to deny untimely motions to compel." *Burgos-Martinez v. City of Worcester*, 345 F. Supp. 3d 105, 106 (D. Mass. 2018).

## II. Factual Background

This action involves a dispute between Windjammers and Sea3 over a maritime contract, namely, an agreement that Sea3 would bareboat charter the Vessel with an option to purchase her. Motion at 1. Beginning on March 17, 2017, Sea3 took possession of the Vessel and made significant changes to her. Amended Complaint (ECF No. 13) ¶¶ 12-13. Windjammers alleges that Sea3 abandoned the Vessel on September 23, 2017, after failing to complete required repairs

2

and improvements and cure a payment default. *Id.* ¶¶ 14-17. Central to the parties' dispute is whether, as Windjammers alleges, Sea3 left the Vessel in a state of disrepair and in worse condition than when Sea3 took possession of her, *id.* ¶ 32, or, as Sea3 contends, the Vessel was delivered to Sea3 in an unseaworthy state, causing Sea3 to incur costs of improvements and repairs, Amended Counterclaims, commencing at page 13 of Defendants/Counterclaim Plaintiffs Sea 3, LLC's, Robert H. Larsen, Jr.'s, and Stephen Taylor's Answer, Affirmative Defenses and Amended Counterclaims (ECF No. 38), ¶¶ 32, 40-41.

Sea3's designated expert, Thomas Hill, inspected the Vessel twice while it was alongside in Portland, Maine: once on May 14, 2018, and again on February 21, 2019. Motion at 1-2. Mr. Hill drafted a report based on those visits as well as his review of documents that included deposition transcripts. Letter dated March 11, 2019, from Thomas R. Hill, AMS, to Twain Braden, Esq. ("Hill Report") (ECF No. 52-1), attached to Plaintiff's Motion *in Limine* To Exclude Opinions of Thomas Hill, In Part ("Motion *in Limine*") (ECF No. 52), at 2.

Sea3 now asks this court to compel Windjammers to permit Mr. Hill a third inspection of the Vessel, which Sea3 understands recently went under contract to be leased by a third party, with plans to move the Vessel out of Portland to engage in commercial day trips with passengers. Motion at 1-2. Windjammers represents that the Vessel charter commenced in July 2019, and that the lessee is entitled to move and/or operate the Vessel at any time upon notice to Windjammers. Plaintiff's Objection to Defendants' Motion To Compel Additional Vessel Visit of Defendants' Expert Thomas Hill ("Objection") (ECF No. 65) at 6.

### III. Discussion

As an initial matter, Sea3's motion to compel is untimely. The motion was filed on September 6, 2019, *see* Motion – nearly six months after discovery closed on March 11, 2019,

3

following the court's grant of two motions to extend the parties' scheduling order deadlines, *see* ECF Nos. 11, 19, 31.

Mr. Hill's expert report was completed on March 11, 2019, the same day discovery closed. *See* Hill Report at 1. Windjammers notes that it was written after all depositions (other than that of Mr. Hill) had been taken, and after Mr. Hill had already inspected the Vessel twice. *See* Objection at 2, 5.

Sea3 makes no compelling argument as to why Mr. Hill requires a third visit now, well after the close of discovery and with a motion *in limine* regarding Mr. Hill's testimony fully briefed and currently under advisement by this court. *See* Motion *in Limine;* ECF Nos. 55, 59.

Sea3 contends that the proposed visit is "vital to Mr. Hill's understanding of the extent that the Plaintiff can claim it needed to repair the Vessel following Sea3's term of custody or, in the alternative, it actually made use of the improvements to the Vessel made by Sea3." Motion at 3. It adds that a third inspection is necessary because Windjammers claims repairs are now complete and has recently contracted to lease the Vessel to a third party, which "effectively 'brackets' Maine Windjammers' alleged damages[.]" Defendants' Reply to Plaintiff's Objection to Defendant[s'] Motion for Expert Thomas Hill To Visit the Vessel ("Reply") (ECF No. 67) at 2. In Sea3's view, "[t]he opportunity to compare these two basic allegations (Sea 3's improvement allegations versus Maine Windjammers' damage allegations), now that the alleged improvements and/or changes to the Vessel are claimed by Plaintiff Maine Windjammers to be complete, is now at hand, however briefly, since the Vessel could sail away at any time." *Id*. at 2.

The force of this argument is undercut by the Hill report itself, which lays out Mr. Hill's opinion regarding Windjammers' alterations to the Vessel, stating, in relevant part:

> It is my opinion that virtually all expenses incurred by the plaintiff in the ongoing (post SEA3) servicing of the vessel is largely due to the previously poor condition the vessel, as identified in the above document and attached photo

> documentation. The limited work that may have been needed to re-assemble
> ceiling planks, refasten doors, paint bulkheads, or complete unfinished projects,
> was minimal and, in fact, was actually taking advantage of, and building upon,
> the considerable upgrades and improvements to the vessel performed by SEA3.

Hill Report at 50.

It is clear that Mr. Hill believes that the Vessel's poor condition upon its delivery to Sea3 necessitated virtually all of Windjammers' Vessel-related expenses upon regaining possession of the Vessel. Thus, it seems unlikely that Windjammers' continued work on the Vessel since Mr. Hill's last visit would alter this opinion. Moreover, the mere fact that Windjammers' alterations to the Vessel are now complete does not support the need for a third visit to the Vessel.

In short, Sea3 has not shown that the burden of the requested third inspection on Windjammers and its third-party lessee outweighs any marginal benefit that might result, rendering its request disproportional to the needs of the case.

Finally, Windjammers makes a persuasive argument that the information sought by Sea3 could be more conveniently obtained by another means; namely, by allowing Mr. Hill simply to observe the Vessel from the pier where she currently is docked. *See* Objection at 4-5. Mr. Hill has made observations of the exterior of the Vessel, including from the pier, during the course of his consultation in this matter, as is clear from both his expert report and his deposition. *See* Hill Report at 3 (photograph of Vessel taken from pier depicting "[v]iew of vessel alongside in Portland, Maine"); Deposition of Thomas Hill (ECF No. 52-2), attached to Motion *in Limine*, at 33 (referring to "photographs that I took this morning when I was driving and I saw the boat up on the railways at Portland Yacht Services, so I stopped and took a couple of pictures of those . . . .").

Insofar as appears, the only alterations that have been made to the Vessel since Mr. Hill's last inspection are to her bowsprit. *See* Motion at 2 (referencing "ongoing issues with the bowsprit"); Objection at 5 (referencing "the minimal repairs to the bowsprit completed since [Mr.

Hill's] last inspection"). Because the bowsprit is located, in the main, on the exterior of the Vessel, *see* Hill Report at 3, it stands to reason that Mr. Hill could observe the repairs at issue from the publicly-accessible pier, and Sea3 has not argued otherwise.[2]

### IV. Conclusion

Because Sea3's request for a third inspection by its expert is untimely and disproportional to the needs of the case and, in any event, the information sought could be obtained, substantially, by less burdensome means, the Motion is **DENIED**.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 11th day of October, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[2] During a viewing of the Vessel at the parties' request on September 10, 2019, *see* ECF No. 64, I also observed that the exterior of the Vessel is visible from the publicly-accessible pier.